UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONALD C. HAYES,

                Plaintiff,

    v.

STATE OF WASHINGTON, et al,

                Defendants.

Case No. 3:17-cv-05759-RBL-TLF

REPORT AND RECOMMENDATION

Noted for August 31, 2018

This matter is before the Court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) (Dkt. 12) and motion for summary judgment pursuant to F.R.C.P. 56 (Dkt. 14). This matter has been referred to the undersigned *Magistrate Judge*. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). Plaintiff has filed a lawsuit under 42 U.S.C. § 1983 seeking damages for alleged violations of his First Amendment, Eighth Amendment, and Fourteenth Amendment rights, as well as his rights under the Americans with Disabilities Act. Dkt. 6.

In his complaint, plaintiff claims:

- his rights under the ADA were violated by being denied access to educational programming due to defendants' failure to accommodate his disability (*id.* at p. 9);

- his First Amendment rights were violated because defendant Christal Henzel retaliated against him by falsifying an infraction report for his

REPORT AND RECOMMENDATION - 1

good faith filing of a grievance "to remedy prison injustices" (*id.* at p. 12);

- his "Fourteenth Amendment Right of 'Informed Consent'" was violated for exercising his right to refuse prison medical services (Dkt. 6, p. 12);

- his Fourteenth Amendment substantive due process and equal protection rights were violated by defendant Henzel's falsification of the infraction report, which resulted in "adverse events" that did not reasonably advance any legitimate penological goals (*id.* at p. 13); and

- his Eighth Amendment rights were violated because defendant Henzel's falsified infraction report led to the denial, delay, or interference with his serious medical needs, in that he is no longer receiving effective medical care (*id.*).

Defendants base their motion for summary judgment on plaintiff's failure to exhaust all of his administrative remedies. Defendants' motion to dismiss also seeks dismissal on the basis that defendants State of Washington and Department of Corrections ("DOC") are immune from liability under 42 U.S.C. § 1983, and that plaintiff has not alleged a valid claim in regard to the alleged violations of this federal statutory and constitutional rights.

Because the record establishes plaintiff has failed to exhaust his administrative remedies, the undersigned recommends the Court grant defendants' summary judgment motion and dismiss all claims against the named defendants. Further, because defendants State of Washington and DOC are immune from liability and not "persons" under 42 U.S.C. § 1983, all claims against them should be dismissed on this basis as well. In addition, in light of the grant of summary judgment, defendants motion for dismiss concerning the merits of plaintiff's statutory and constitutional claims should be denied as moot.

I.     FACTUAL AND PROCEDURAL HISTORY

A.     The Washington Offender Grievance Program

The DOC has a Washington Offender Grievance Program ("OGP"). Dkt. 15, p. 1. Each

REPORT AND RECOMMENDATION - 2

new inmate is given information regarding the DOC's grievance process during intake, and is also told that the DOC's policy and procedures governing that process are available to read in that inmate's prison library or law library. Dkt. 15, p. 2; Dkt. 15-1, Exhibit 1, p. 19.

Inmates can file grievances on a wide range of issues relating to their incarceration. Dkt. 15, p. 2. Grievances can be filed, for example, challenging: DOC policies, rules, and procedures, and the application or lack thereof; the actions of prison staff or other offenders; retaliation by prison staff; access to medical care; and conditions of confinement. *Id.*

There are limits to what may be the subject of a grievance. For example, inmates may not use the grievance process to challenge administrative segregation placement or retention, classification decisions, or disciplinary actions. Dkt. 15, p. 2. Instead, inmates are provided other ways to challenges these issues. *Id.*; *see also* Dkt. 15-1, Exhibit 1, pp. 4-5, 16-17.

The DOC's grievance procedure contains four levels of review. Dkt. 15, p. 2. At Level 0, a prison's grievance coordinator screens the offender complaint, and may pursue informal resolution of the matter, return the complaint for revisions, or reject the complaint because the issue it raises is not grievable. Dkt. 15, p. 2; Dkt. 15-1, Exhibit 1, pp. 22, 24. If a complaint is rejected for being "non-grievable", that rejection can be appealed to the DOC's Grievance Program Manager. Dkt. 15, p. 2; Dkt. 15-1, Exhibit 1, p. 23.

If a complaint is accepted as a formal grievance, it moves to Level I. Dkt. 15, p. 3; Dkt. 15-1, Exhibit 1, pp. 23-24. Upon notification of the grievance coordinator's decision, the inmate has five days to appeal to that inmate's prison superintendent for Level II review. Dkt. 15, p. 3; Dkt. 15-1, Exhiboit 1, p. 24. The inmate also has five days to appeal the superintendent's Level II decision. *Id.* Grievances that are appealed to Level III are handled by DOC Headquarters, which are not further appealable. Dkt. 15, p. 3; Dkt. 15-1, Exhibit 1, p. 24.

REPORT AND RECOMMENDATION - 3

B.  Associates Arts Program/Class

At all times relevant to this lawsuit plaintiff, who currently is on work release, was an inmate at under the custody of the DOC at the Coyote Creek Corrections Center. On March 30, 2017, plaintiff entered into an associate arts program through the Walla Walla Community College. Dkt. 6, p. 10. On April 3, 2017, plaintiff was transferred to the infirmary at the Washington State Penitentiary due to a recurrent injury he alleges was caused by inadequate medical treatment. *Id.*

Plaintiff was assured by his associate arts program instructor prior to his transfer that he would be able to make up any course work he might miss in the class he was taking. *Id.* at pp. 10-11. Plaintiff was released from the infirmary on April 11, 2017. *Id.* at p. 11.

On April 20, 2017, plaintiff filed an offender complaint requesting he be reinstated to his class. Dkt. 6, p. 37. In an April 24, 2017 response to the complaint, plaintiff was informed he was dropped from the class because he was absent too much to continue that academic quarter, but would be reinstated to the class for the summer quarter. *Id.* The response further notes that the complaint was resolved informally. *Id.*

Plaintiff timely appealed the response to Level I on May 3, 2017. Dkt. 15, p. 3; Dkt. 15-1, Exhibit 2, p. 48.c In a May 12, 2017 response, the grievance coordinator upheld the prior response and informed plaintiff that he was welcome to enroll in classes in the summer quarter beginning on June 19, 2017.[1] Dkt. 15, pp. 3-4; Dkt. 15-1, Exhibit 2, p. 48. Plaintiff did not appeal this response. Dkt. 15, p. 4.

C.  Retaliation, Informed Consent, and Falsification of Infraction Report

Plaintiff alleges that around the period of April 30, 2017, through May 7, 2017, he

---

[1] Plaintiff alleges that although he was assured he would be placed into classes on or around this date, he never was. Dkt. 6, p. 11.

REPORT AND RECOMMENDATION - 4

experienced problems scheduling necessary morning wound dressing changes, causing him to be late for work. Dkt. 6, pp. 15-16. Specifically, plaintiff alleges this was because a prison nurse, Nurse Polly, allowed other inmates who were scheduled to have their dressings changed at 8:00 a.m., to show up at 7:30 a.m., the time slot plaintiff was scheduled for. Dkt. 6, p. 15.

Plaintiff alleges that on May 4, 2017, Nurse Polly told him it was "first come, first serve" for dressing changes. *Id.* at p. 16. Over the course of three days, plaintiff proceeded to send a series of "kiosk"/e-mail messages intended for Nurse Polly, complaining to her about the scheduling issue, and informing her that he was going to file a grievance regarding that issue. *Id.* at pp. 16-17. Plaintiff also informed his treatment provider, P.A. Summers, that "that until this gets ironed out nursing has lost consent for dressing changes." *Id.* at p. 18.

Plaintiff filed an offender complaint on May 6, 2017, requesting that "medical" stick to the times scheduled for mandatory wound dressing changes. Dkt. 15-1, p. 52. On May 10, 2017, plaintiff was informed that he needed to re-write the grievance, because his complaint did not fit within the allowed space on the grievance form he submitted. *Id.* Plaintiff was told to return the re-written grievance by May 17, 2017 (*id.*), but there is no indication that he did so.

Plaintiff alleges that on May 7, 2017, he approached the prison's "pill line" window in a respectful and calm manner, and asked defendant Christal Henzel if he could speak with her about the dressing change scheduling issue. Dkt. 6, p. 19. Plaintiff alleges defendant Henzel informed him that she did not want to talk with him, after which plaintiff alleges he stated "OK" and then walked away. *Id.* at p. 20.

Plaintiff alleges that later that day he was handcuffed by security staff and placed in the prison's Intensive Management Unit. *Id.* The next day, May 8, 2017, an initial serious infraction report was issued. *Id.* at p. 44. In that report, defendant Henzel states that the previous day while

1  checking kiosk messages, she saw plaintiff had written 10 messages "in a very short period of
2  time" regarding the scheduling of his medical appointments, and perceived that he was writing
3  them "in an angry and forceful tone." Dkt. 6, p. 44.

4  Defendant Henzel further reported she perceived plaintiff's messages "as a threat and
5  intimidation" to herself and other prison medical staff, including P.A. Summers. *Id.* In addition,
6  defendant Henzel reported that when plaintiff spoke with her at the pill line, she had to cut him
7  off and tell him four times that she would not discuss his medical appointment issue before he
8  stopped and left. *Id.* at p. 46.

9  Defendant Henzel reported that she "did not feel comfortable or safe" at the time,
10  "because of the content of the kiosks and his unwillingness to stop talking about them or leave
11  when told." *Id.* Accordingly, defendant Henzel found both the kiosk messages and plaintiff's
12  behavior while at the pill line window "violates Rule #663 Using physical force, intimidation, or
13  coercion against any person." *Id.* at p. 44.

14  Plaintiff had a hearing on the infraction report on May 11, 2017. Dkt. 6, p. 22. The
15  infraction ultimately was reduced from a major to a minor infraction, and plaintiff was given a
16  reprimand and warning. Dkt. 15-1, Exhibit 4, p. 54.

17  On May 11, 2017, plaintiff submitted an offender complaint accusing defendant Henzel
18  of falsifying her infraction report, and requesting "appropriate action." *Id.* In response, plaintiff
19  was informed that this issue was not grievable, because infractions/disciplinary actions "have an
20  established appeal process," which plaintiff could pursue. *Id.*

21  On May 16, 2017, plaintiff submitted another offender complaint, stating that he was "not
22  challenging [his] sanction on this matter," but rather that he was "grieving and requesting an
23  investigation as to why Nurse Henzel would lie and falsify a serious infraction report." *Id.* at p.

24
25

REPORT AND RECOMMENDATION - 6

1  56. In response, on May 22, 2017, plaintiff was told his complaint had been sent to the grievance
2  program manager at DOC headquarters for review. *Id.*
3      Plaintiff sent several "offender kites" to the grievance program manager in late May and
4  early June 2017, further explaining what he saw as the facts surrounding the infraction report and
5  defendant Henzel's actions. Dkt. 15-1, pp. 58-67. On June 13, 2017, the grievance program
6  manager responded to plaintiff's May 16, 2017 offender complaint, informing plaintiff that he
7  concurred with the initial response that the complaint was not grievable. *Id.* at p. 68. A similar
8  response was provided to plaintiff's early June 2017 submission. *Id.* at p. 69.
9  D.     Medical Care
10     On June 1, 2017, plaintiff submitted an offender complaint, in which he complained that
11 he was "no longer receiving weekly debridements [sic] as prescribed" for a large wound he had
12 on his left leg. Dkt. 15-1, Exhibit 4, p. at 71. Plaintiff further complained that when he does
13 receive them, the process employed is incorrect, making his wound care ineffective. *Id.* As a
14 result, plaintiff complained that he remained in severe pain and prone to infections, which kept
15 him disabled. *Id.* He requested that he be provided with "the proper effective treatments." *Id.*
16     The offender complaint was accepted and processed as a formal Level I grievance. Dkt.
17 15, p. 4; Dkt. 15-1, Exhibit 4, p. 71. In response, on July 12, 2017, plaintiff was informed that a
18 review of health record documentation indicated that his "debridement/dressing changes were
19 done consistently," and that it appeared providers were monitoring him closely to ensure he did
20 not get another infection. Dkt. 15-1, Exhibit 4, p. 72. This response was not appealed further.
21 Dkt. 15, p. 5.
22                    II.    DISCUSSION
23     Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that
24 there is no genuine issue as to any material fact and that the moving party is entitled to judgment
25

REPORT AND RECOMMENDATION - 7

1  as a matter of law. FRCP 56(c). In deciding whether summary judgment should be granted, the

2  Court "must view the evidence in the light most favorable to the nonmoving party," and draw all

3  inferences "in the light most favorable" to that party. *T.W. Elec. Serv., Inc. v. Pacific Elec.*

4  *Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). When a summary judgment motion is

5  supported as provided in FRCP 56, an adverse party may not rest upon the mere allegations or

6  denials of his pleading, but his or her response, by affidavits or as otherwise provided in FRCP

7  56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2).

8      If the nonmoving party does not so respond, summary judgment, if appropriate, shall be

9  rendered against that party. *Id.* The moving party must demonstrate the absence of a genuine

10  issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere

11  disagreement or the bald assertion that a genuine issue of material fact exists does not preclude

12  summary judgment. *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*,

13  818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of

14  a claim or defense and whose existence might affect the outcome of the suit," and the materiality

15  of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv.*, 809

16  F.2d at 630.

17      Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a

18  grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some

19  'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477

20  U.S. at 290).

21  A.    <u>Defendants State of Washington and Department of Corrections</u>

22      To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct

23  complained of was committed by <u>a person</u> acting under color of state law, and (b) the conduct

24

25

REPORT AND RECOMMENDATION - 8

deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Under the Eleventh Amendment, furthermore, a state is not subject to suit by its own citizens in federal court. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). As an arm of the state, a state agency also is immune from suit in federal court under the Eleventh Amendment. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). The State of Washington and the DOC are thus immune from liability.

Likewise, no remedy is available for plaintiff under 42 U.S.C. § 1983 against the State of Washington or the DOC, because neither a state nor an agency thereof is a "person" within the meaning of section 1983. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989).

Accordingly, both the State of Washington and the DOC should be dismissed from this cause of action.

B.   <u>Failure to Exhaust Administrative Remedies</u>

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

1  42 U.S.C. § 1997e(a). This requirement "applies to all prisoners seeking redress for prison

2  circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002).

3  "All 'available' remedies" must be exhausted, "[e]ven when the prisoner seeks relief not

4  available in grievance proceedings." *Porter*, 534 U.S. at 524. The Court, furthermore, must

5  dismiss a prisoner's complaint "'when there is no *presuit* exhaustion,' even if there is exhaustion

6  while suit is pending." *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005) (quoting *McKinney

7  v. Carey*, 311 F.3d 1198, 1200 (9th Cir.2002)) (emphasis added by court of appeals).

8  Failure to exhaust "is 'an affirmative defense the defendant must plead and prove.'"

9  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204,

10  216 (2007)). "In the rare event that a failure to exhaust is clear on the face of the complaint, a

11  defendant may move for dismissal under Rule 12(b)(6)." *Id.* "Otherwise, defendants must

12  produce evidence proving failure to exhaust in order to carry their burden" in a motion for

13  summary judgment. *Id.*

14  Exhaustion of administrative remedies is an issue that is "appropriately decided early" in

15  litigation. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (citing *Jones v. Bock*, 549 U.S.

16  199 (2007)). It is a matter of "judicial traffic control." *Id.* (quoting *Pavey v. Conley*, 544 F.3d

17  739, 741 (7th Cir.2008)); citing and quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S.

18  41, 50-51 (1938) ("[N]o one is entitled to judicial relief for a supposed or threatened injury until

19  the prescribed administrative remedy has been exhausted[.]")). Thus, "[e]xhaustion should be

20  decided, if feasible, before reaching the merits of a prisoner's claim." *Id.*

21  Plaintiff has not exhausted the available administrative remedies in regard to any of his

22  claims. None of the offender complaints plaintiff submitted were appealed beyond the first level

23  of review. Nor did plaintiff appeal the disciplinary infraction he received, despite the availability

24

25

REPORT AND RECOMMENDATION - 10

1  of a separate appeal process through which to do so. Indeed, plaintiff admits that he never filed
2  an appeal of the infraction. Dkt. 33, p. 1.

3  In response to defendant's motion for summary judgment, plaintiff makes a conclusory
4  allegation that he exhausted his administrative remedies through the third level of the DOC's
5  grievance procedure. Dkt. 29, p. 1. However, plaintiff presents no evidence to support this
6  allegation. *See* Dkt. 31.

7  Rather, plaintiff appears to be arguing that he met the exhaustion requirement because he
8  was told by one or more DOC employees that the infraction he received was not grievable or that
9  his grievances were not appealable. Dkt. 29, p. 1; Dkt. 33, p. 2. Plaintiff further appears to argue
10 that the relevant issue is not whether he appealed his infraction and/or sanction, but the offender
11 complaints he filed in regard to defendant Henzel's alleged falsification of the infraction report.
12 Dkt. 33, pp. 1-2.

13 Either way, plaintiff's argument is without merit. First, as noted above, all inmates are
14 given information, and provided access thereto, regarding the DOC's grievance procedures on
15 intake. Plaintiff does not allege that he did not receive or was unaware of this information. He
16 also presents no evidence that he was told he could not appeal those issues that actually are
17 grievable. The evidence shows plaintiff was able to and did appeal one of his grievances to Level
18 I, but did not pursue that appeal further.

19 Second, while plaintiff was told that his complaint pertaining to the alleged falsification
20 of the infraction report by defendant Henzel was not grievable, he also was informed that a
21 separate appeal process was available for appealing the infraction. *Marella v. Turhune*, 568 F.3d
22 1024, 1027 (9th Cir. 2009) (the plaintiff "was not required to 'exhaust further levels of review
23 once he [had] . . . been reliably informed by an administrator that no remedies are available.'")

24

25

(quoting *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (noting exhaustion is not required "when *no* pertinent relief can be obtained through the [administrative] process.") (emphasis in original)).

Plaintiff also failed to take advantage of the option to appeal the infraction. *Marella*, 568 F.3d at 1028 ("If a prisoner had full opportunity and ability to file a grievance timely, but failed to do so, he has not properly exhausted his administrative remedies."). Plaintiff asserts that the complaints he submitted regarding defendant Henzel's alleged falsification should be treated as presenting a separate grievable issue, but this argument is not persuasive. That allegation goes to the validity of the infraction itself, and thus it was reasonable for prison officials to require it to be raised via the disciplinary appeal process. Nor has plaintiff shown that he could not have raised the issue via that process. *See id.* at 1027.

## CONCLUSION

Plaintiff has failed to establish he exhausted his available administrative remedies as required. Thus, all claims against the named defendants should be dismissed with prejudice on this basis. In addition, because defendants State of Washington and DOC are immune from liability under the Eleventh Amendment and are not persons under 42 U.S.C. § 1983, they should be dismissed with prejudiced on this basis as well.

The undersigned therefore recommends that the Court GRANT defendants' motion for summary judgment (Dkt. 14), DENY defendants' motion to dismiss plaintiff's claims on the merits (Dkt. 12) as moot, and DISMISS plaintiff's complaint (Dkt. 6) with prejudice.

The parties have **fourteen (14)** days from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); F.R.C.P. 6; F.R.C.P. 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474

U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **August 31, 2018**, as noted in the caption.

Dated this 16th day of August, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13